**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|                                    |                                   |
| :--------------------------------- | :-------------------------------- |
| **UNITED STATES OF AMERICA**       |                                   |
| **v.**                             | **Criminal Action No. 20-16 (JEB)** |
| **CHRISTOPHER CARROLL,**           |                                   |
| **Defendant.**                     |                                   |

## <u>MEMORANDUM OPINION</u>

On December 3, 2020, this Court sentenced Defendant Christopher Carroll to twelve months and one day of imprisonment for the possession of a firearm and ammunition by a person previously convicted of a felony. Having delayed the Court's execution of that sentence for several years because of his serious health problems, Carroll now moves to reduce his sentence on the basis of compassionate release under 18 U.S.C. § 3582(c)(1)(A). He seeks to avoid imprisonment in Bureau of Prisons facilities in light of his medical conditions and the purported inability of BOP to manage his care. To that end, he requests that this Court reduce his sentence to time served and four months of home detention as a condition of supervised release, or, alternatively, to reduce his sentence to 180 days so that he can serve the remainder of his sentence in the D.C. Jail. Because Defendant has not adequately shown that extraordinary and compelling reasons warrant compassionate release, the Court will deny the Motion.

## I.    Background

Carroll was originally ordered to self-surrender two weeks after the Judgment was imposed back in December 2020. See ECF No. 37 (Judgment) at 3. He sought to delay such reporting given his recent diagnoses of Stage 5 kidney disease, diabetes, hyperlipidemia, anemia,

1

benign prostatic hyperplasia, and chronic obstructive pulmonary disease (COPD), on top of prior diagnoses of post-traumatic stress disorder and hypertension.  See ECF No. 89 (Mot.) at 1.

This Court granted his request to extend his self-surrender date in light of those illnesses. See ECF No. 41 (Ext. Req. Order); see also ECF Nos. 39 (First Ext. Req.), 40 (First Ext. Req. Supp.).  Several more extension requests were granted as Defendant grappled with repeated periods of hospitalization.  See ECF Nos. 43, 69, 74, 80.  On May 29, 2024, Carroll filed his first motion seeking compassionate release with this Court, arguing that his medical conditions constitute an extraordinary and compelling circumstance justifying a sentence reduction.  See ECF No. 76 (First Mot.) at 3.

Defendant's medical-treatment needs are indeed extensive.  He currently receives dialysis three times per week, as well as insulin injections and fifteen other medications to control his illnesses.  See Mot. at 11–13.  These medications are crucial to manage the "risk of severe health consequences or even death" arising from his precarious physical condition.  Id. at 13.  "[T]he interplay between his kidney failure, his diabetes, and his hypertension," moreover, renders his other conditions practically uncurable while "his kidney disease remains intractable."  Id. at 11–12.

After some back-and-forth regarding medical records, the Court, believing that Defendant could be adequately treated by BOP, finally ordered him on September 12, 2024, to report to the Federal Medical Center in Devens, Massachusetts, within a month.  See ECF Nos. 85 (Order to Report); 86-1 (Notice of Designation); 97 (Opp.) at 6.  Not only did he fail to surrender, but he also became a loss of contact.  See Opp. at 6.  The Court consequently issued a warrant for his arrest, and he was apprehended on February 26, 2025.  Id.; see Minute Order of Oct. 21, 2024. He has remained at the D.C. Jail since that date.  See Opp. at 6.  In other words, he has served

about four-and-a-half months of his one-year-and-a-day sentence.  With good time credit, he has about six months left to serve.

On May 13, 2025, Carroll filed this Motion requesting compassionate release, reiterating his prior arguments that his severe illnesses justify a sentence reduction.  See Mot. at 1.

## II.    Legal Standard

Federal courts "may not modify a term of imprisonment once it has been imposed," 18 U.S.C. § 3582(c), aside from "a few narrow exceptions."  Freeman v. United States, 564 U.S. 522, 526 (2011).  One such exception provides for compassionate release, which defendants may seek after exhausting administrative remedies.  See 18 U.S.C. § 3582(c)(1)(A) (as modified by the First Step Act of 2018).  This section allows a court to reduce a final sentence "after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction" and the "reduction is consistent with the applicable policy statements issued by the Sentencing Commission."  Id. "As the moving party, the defendant bears the burden of establishing that he is eligible for a sentence reduction under § 3582(c)(1)(A)."  United States v. Johnson, 619 F. Supp. 3d 81, 88 (D.D.C. 2022) (quotation marks omitted).

The Sentencing Commission acknowledges that the medical conditions of a defendant can constitute an "extraordinary or compelling reason" to reduce his sentence.  See U.S.S.G. § 1B1.13(b)(1)(A)–(C).  As relevant here, "a serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which [he] is not expected to recover" qualifies as such a reason justifying compassionate release.  Id. § 1B1.13(b)(1)(B)(i).  The Guidelines also allow for a reduction when the facts of the case present a "circumstance or combination of circumstances

that . . . are similar in gravity" to those enumerated in § 1B1.13(b).  Id. § 1B1.13(b)(5).

Regardless of the specific justification, however, an "extraordinary reason must be most unusual, far from common, and having little or no precedent.  And a compelling reason must be both powerful and convincing."  United States v. Jenkins, 50 F.4th 1185, 1197 (D.C. Cir. 2022) (cleaned up); see also United States v. Jackson, 26 F.4th 994, 1001–02 (D.C. Cir. 2022) (noting that reason that is commonly applicable outside prison population is not extraordinary or compelling).

If the court finds that extraordinary and compelling reasons merit early release, it must then consider the sentencing factors set out in 18 U.S.C. § 3553(a) "to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13.  When the factors do allow it, a court may then reduce the sentence, including to time served.  See 18 U.S.C. § 3582(c)(1)(A).

## III.    Analysis

The Court first considers whether Carroll's circumstances are extraordinary and compelling and then assesses the § 3553(a) factors.  As the parties agree that he has satisfied his administrative-exhaustion requirements, see Mot. at 3–4; Opp. at 10–11, the Court need not separately address that question.

### A.    Extraordinary and Compelling Reasons

Among his many illnesses, Defendant contends that his kidney disease, diabetes, and hypertension particularly diminish his capacity for self-care in federal custody, a risk he argues is exacerbated by the current conditions at FMC Devens.  See Mot. at 4–5; ECF No. 98 (Reply) at 8–10; see also U.S.S.G. § 1B1.13(b)(1)(B)(i).  He rests this argument primarily on the hypothetical level of care he would receive at Devens.

Carroll argues that BOP's staffing shortages and limited budgetary resources have led, among other purported deficiencies, to infrastructure problems in healthcare units, diabetes-testing backlogs, and lapses in preventative-health screenings at Devens.  See Reply at 9–10.  He also points to broader indicia of inadequate care across the entire BOP system.  See Mot. at 5–10.  These conditions necessitate compassionate release, he asserts, because "transfer to FMC Devens, with his medical conditions, may exacerbate, not ameliorate, his medical and mental health conditions."  Reply at 10.  The Government responds that these "allegations regarding BOP's staffing levels and its ability to provide medical care . . . cannot constitute an extraordinary and compelling circumstance," as they are broadly applicable and insufficiently tethered to Defendant's own medical-treatment experience in BOP custody.  See Opp. at 16.

This Court fully acknowledges the significance of Defendant's medical conditions and the level of care that he requires.  Numerous courts nevertheless agree that broad assertions about the mere possibility of heightened medical risks arising from BOP custody are insufficient to meet § 3582(c)(1)(A)'s high bar.  See, e.g., United States v. Holroyd, 464 F. Supp. 3d 14, 18–19 (D.D.C. 2020) ("Holroyd's generalized allegations about the BOP's response to the pandemic are not enough to justify release."); United States v. Johnson, 2020 WL 2610737, at *2 (N.D. Ohio May 22, 2020) ("But exceptional reasons based on probability, conjecture, intuition or speculation do not justify release.").  Rather, a specific evidentiary showing tied to Carroll's specific treatment needs and risk factors is required to justify compassionate release, lest the Court expand compassionate release to a "vast number of inmates at a wide range of prisons." Opp. at 16.  Because the Motion does not adequately demonstrate such a nexus, Defendant's claims are neither "most unusual, far from common, and having little or no precedent," nor "powerful and convincing."  Jenkins, 50 F.4th at 1197 (cleaned up).

Start with his arguments concerning the BOP system as a whole. Carroll does not directly mention his prospective custodial institution. The only evidence relating to a particular prison, as opposed to the system as a whole, concerns FMC Butner and FCI Sheridan. See Mot. at 6–8; see also Reply at 9. Evidence concerning inadequate care at a different facility, however, has little relevance to his particular risk factors while in BOP custody. Cf. United States v. Rice, 2020 WL 6887790, at *3 (D.D.C. Nov. 24, 2020) (considering only evidence that concerned defendant's current prison facility's containment of COVID-19). Defendant thus cannot demonstrate an extraordinary and compelling reason for compassionate release simply by highlighting BOP's systemic challenges. The Court, moreover, need not discount the seriousness of his condition to reach this conclusion; rather, it follows from the fact that § 3582(c)(1)(A) requires a nexus between Carroll's health and FMC Devens's ability to manage his care. Cf. United States v. Mendoza-Garibay, 2022 WL 2673231, at *5 (E.D. Tex. July 11, 2022) (requiring defendant to have "serious comorbidity and evidence the facility is not effectively controlling" COVID-19 to find extraordinary and compelling circumstance).

Carroll makes additional allegations specific to FMC Devens in his Reply, but these are insufficient as well, see Reply at 2–4; indeed, many have nothing to do with his treatment needs or medical risks. See, e.g., id. at 4 (noting, among other similarly irrelevant points, that "shortages of Education Department employees limited FMC Devens from offering General Education Diploma courses"). As for those that do concern his medical conditions, they do not demonstrate even a substantial likelihood, much less a powerful and convincing one, that Devens cannot manage Carroll's kidney disease, diabetes, and hypertension. See id. at 9–10. For instance, "evidence of significant water intrusion" from the roof of the dialysis unit or that "not all" diabetes patients receive testing every three months shows only that Devens could take steps

to improve its medical infrastructure, but such evidence does not demonstrate that Defendant will not in fact receive the treatments necessary to manage his conditions while incarcerated.  Id. (quotation marks omitted)  Indeed, the opposite is true, since courts have found in multiple instances that Devens is able to care for conditions that are similar in severity to Carroll's, see, e.g., United States v. Cherry, 2021 WL 1222121, at *3 (S.D.N.Y. Mar. 31, 2021) (denying compassionate release where FMC Devens "stands ready, willing, and most importantly, able to care for" defendant's aggressive ulcerative colitis), and thus speculative evidence to the contrary is unavailing.

Defendant further contends that his care will be inadequate during his transition from the D.C. Jail to Devens in Massachusetts.  See Reply at 13.  None of these conjectures, however, is supported by any evidence beyond merely listing the distances from D.C. to popular holdover facilities.  Id.; see also Opp. at 22 n.11 (offering assurance from U.S. Marshals that no medical treatments will be missed during transition).  Defendant has therefore not shown that his treatment needs will be neglected during this transitionary period.

Perhaps sensing these shortcomings, Carroll falls back on a "catchall" provision that covers situations where "[t]he defendant presents any other circumstance or combination of circumstances that . . . are similar in gravity" to the recognized categories.  See U.S.S.G. § 1B1.13(b)(5); see also Reply at 7–8.  He points to instances where courts "have found in § 1B1.13(b)(5) a mechanism to do justice where unenumerated extraordinary and compelling reasons so warrant."  Reply at 8 (quoting United States v. Evans, 759 F. Supp. 3d 1247, 1267 (S.D. Fla. 2024)).  These cases, however, do not help Defendant.  They merely illustrate the point that, even under the so-called "catchall" provision, speculation is still unavailing.  See, e.g., United States v. Nunez, 2024 WL 4504493, at *6 (S.D.N.Y. Oct. 16, 2024) (relying on harsh jail

conditions to conclude that defendant's time served was sufficient reason to grant compassionate release); United States v. Robinson, 2025 WL 841014, at *12–14, 17 (W.D. Pa. Mar. 18, 2025) (finding juvenile transfer to federal court leading to extreme-outlier mandatory sentence and harsh prison conditions after twenty years of incarceration sufficient for eligibility for compassionate release). Defendant must do more than gesture at the mere possibility of inadequate care in order to demonstrate a circumstance "of similar gravity." As he has not done so, the Court declines to find that his situation presents an extraordinary and compelling reason for compassionate release under § 1B1.13(b)(1)(B)(i) or (b)(5).

      B.     <u>Section 3553(a) Factors</u>

Even if Carroll had cleared this high bar, the Court would still not find his release warranted. That is because it must also consider whether release would be consistent with the factors set forth in 18 U.S.C. § 3553(a). United States v. Edwards, 2020 WL 5518322, at *4 (D.D.C. Sept. 12, 2020). Those factors — including "the nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), and "the history and characteristics of the defendant," id. — weigh against release.

First, the offense is serious. As previously noted, Carroll was convicted for being a felon in possession of a firearm. See Judgment at 1. He fired the gun into the air while high on cocaine and then attempted to flee from the police when approached. See ECF No. 25 (Statement of Offense) at 3; ECF No. 32 (Govt. Sent. Mem.) at 2, 6.

Second, Carroll abused the trust the Court placed in him. Time and again, this Court delayed his self-surrender date in recognition of his health issues. But he then failed to report and became a loss of contact. In addition, the Court's sentence of one year and a day was

considerably less than the 23 months sought by the Government and the Guidelines range of 30–37 months.  <u>See</u> Govt. Sent. Mem. at 1.

Defendant's criminal history further tips the scales against compassionate release.  Of particular relevance to this case, Carroll was on probation at the time of his arrest following a conviction of First-Degree Assault where he "stabbed an unarmed victim to death in a market in Prince George's County."  Opp. at 19; <u>see also</u> Govt. Sent. Memo at 4.  Defendant has four other criminal convictions to boot.  <u>See</u> Govt. Sent. Mem. at 5.  His history and characteristics therefore add to the case against compassionate release.

## IV.    Conclusion

For the foregoing reasons, the Court will deny Defendant's Motion for Compassionate Release.  A separate Order so stating will issue this day.

<u>/s/ *James E. Boasberg*</u>
JAMES E. BOASBERG
Chief Judge

Date:  <u>July 23, 2025</u>